IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

ELMER SMITH                                                                            PLAINTIFF

v.                      NO. 1:16-cv-00150 PSH

NANCY A. BERRYHILL, Acting Commissioner            DEFENDANT
of the Social Security Administration

## MEMORANDUM OPINION AND ORDER

Plaintiff Elmer Smith ("Smith") began this case by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the final decision of the Acting Commissioner of the Social Security Administration ("Commissioner"), a decision based upon findings made by an Administrative Law Judge ("ALJ").

Smith maintains that the ALJ's findings are not supported by substantial evidence on the record as a whole.[1] It is Smith's contention that his residual functional capacity was erroneously assessed. He so maintains for the following three reasons: 1) the record does not contain a physical or mental residual functional capacity assessment from a treating or examining physician, 2) there is nothing to support the ALJ's finding that Smith is capable of performing the standing and walking requirements of light work, and 3) Smith has greater mental limitations than the ALJ found.

---

[1]     The question for the Court is whether the ALJ's findings are supported by substantial evidence on the record as a whole. "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." See Boettcher v. Astrue, 652 F.3d 860, 863 (8th Cir. 2011).

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004). The assessment is made using all of the relevant evidence in the record, but the assessment must be supported by some medical evidence. See Wildman v. Astrue, 596 F.3d 959 (8th Cir. 2010). As a part of making the assessment, the ALJ must evaluate the claimant's subjective complaints. See Pearsall v. Massanari, 274 F.3d 1211 (8th Cir. 2001). The ALJ does so by considering the medical evidence and evidence of the claimant's daily activities; the duration, frequency, and intensity of his pain; the dosage and effectiveness of his medication; precipitating and aggravating factors; and functional restrictions. See Id. at 1218 [citing Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984)].

Smith alleged in his applications for disability insurance benefits and supplemental security income payments that he became disabled beginning on May 8, 2013. He alleged that he became disabled beginning on that date as a result of impairments that include depression, diabetes, neuropathy, hypertension, joint pain, right knee surgery, back pain, headaches, blurred vision, osteoarthritis, and degenerative disc disease. He ably summarized the testimonial, documentary, medical, and psychological evidence in the record, see Document 13 at CM/ECF 2-18, and the Commissioner did not challenge the summary or otherwise place any of it in dispute. The Court accepts the summary as a fair summation of all the evidence. The summary will not be reproduced, save to note several matters germane to the issues raised in the parties' briefs.

On January 9, 2012, or approximately sixteen months before the alleged onset date, Smith was seen by Dr. Michael Spataro, M.D., ("Spataro") for a consultative examination. See Transcript at 363-367. Spataro assessed Smith's mental status/psychiatric condition and found nothing remarkable. Spataro performed a physical examination and found evidence to substantiate Smith's complaints of pain in his shoulders, lower back, hips, knees, and feet. Spataro offered the following opinions regarding Smith's ability to perform work-related activities:

> Based on today's examination, I believe the claimant has mild to moderate limitations to sit, walk, and stand for a full workday secondary to chronic lower back pain, hip pain, knee pain, and foot pain. He has mild to moderate limitations to routinely lift and carry heavy objects secondary to same, as well as intermittent neck pain and shoulder pain bilaterally. There are no limitations to hold a conversation and respond appropriately to questions. There are no limitations to carry out and remember instructions. …

See Transcript at 366.

Between October 12, 2012, and July 18, 2015, Smith was seen at the White River Medical Center on what appears to have been approximately sixteen occasions. See Transcript at 459-493 (10/12/2012-10/13/2012), 494-499 (12/09/2012), 506-510 (01/24/2013), 516-521 (04/14/2013), 528-535 (05/16/2013), 543-548 (05/19/2013), 550-558 (06/13/2013), 561-564 (10/03/2013), 369-379, 570-586 (10/31/2013-11/04/2013), 621-624 (04/30/2014), 827-832 (06/21/2014), 1032-1034 (11/11/2014), 987-992 (06/15/2015), 1040-1044 (07/05/2015), 1104-1108 (07/18/2015), 1099-1102 (10/08/2015). He was seen for complaints that included abdominal pain, elevated blood sugar, hallucinations, low back pain, headaches, right arm numbness, suicidal thoughts, dizziness, and leg pain.

The White River Medical Center progress notes reflect, inter alia, that a CT scan of Smith's lumbar spine was performed on June 13, 2013, after he injured his back in a fall. See Transcript at 558. The results of the testing revealed arthritic changes with small disc bulges at the L3-4 and L5-S1 levels.

Smith was hospitalized at the White River Medical Center from October 31, 2013, through November 4, 2013, after experiencing thoughts of suicide. See Transcript at 369-379, 570-586. A medical history was compiled and included the following self-reports and observations:

> ... [Smith] has had depression for some time now. He has multiple medical problems, including diabetes, chronic pain, osteoarthritis, degenerative disc disease, and neuropathy. At this time, he is unable to work, which has definitely made his mood worse. He expresses some hopelessness and helplessness. He is on a variety of different medications, and treatment of his pain has been complicated. Thankfully, he has not used opioid medications, and so this is not an issue; however, he would like to get some relief from his pain. He would certainly like to go back to work. He has not been able to get disability. He is currently taking aspirin, lisinopril, metformin and insulin; diclofenac for pain, amitriptyline for pain, Naprosyn for pain; simvastatin and fluoxetine.

See Transcript at 370. Dr. James Stanley, M.D., ("Stanley") assessed Smith's mental status/psychiatric condition and observed that he was alert and fully oriented and exhibited a depressed mood, a congruent affect, and a goal-directed and logical thought process. Stanley observed that Smith "appear[ed] to function within the broad limits of average" cognitive ability. See Transcript at 371. Stanley additionally observed that Smith's gait was within normal limits. Stanley diagnosed, inter alia, a major depressive disorder. Stanley continued Smith's medication, advised him to follow-up with his primary care physician, and advised him seek mental health treatment.

Smith presented to the White River Medical Center on April 30, 2014, complaining of back pain. See Transcript at 621-624. He reported that he had been experiencing pain for several years, and it was becoming progressively worse. He reported that it was not controlled with rest, activity modification, or medication. He reported that aggravating factors included walking and standing. Dr. Meraj Siddiqui, M.D., ("Siddiqui") nevertheless observed that Smith had a normal gait and station and exhibited normal muscle strength and tone in his extremities. Siddiqui did observe, though, that palpation and hyperextension of Smith's lumbar facet joints produced low back pain. Siddiqui diagnosed back pain and recommended, inter alia, lumbar medial branch blocks.

Smith presented to the White River Medical Center on June 15, 2015, complaining of lower extremity pain. See Transcript at 987-992. Upon physical examination, he was found to have a normal range of motion in his extremities and no neurologic abnormalities. Testing revealed mild soft tissue swelling in his left leg.

Smith presented to the White River Medical Center on October 8, 2015, for continued complaints of back pain. See Transcript at 1099-1102. Smith reported that his medication included meloxicam, gabapentin, and Flexeril, and the medication had "helped some." See Transcript at 1099. Dr. Neeraj Kumar, M.D., ("Kumar") observed that Smith had pain with palpation of the lumbar facet joints at L3-L4, L4-L5, and L5-S1. Kumar diagnosed, inter alia, "[l]umbosacral spondylosis without myelopathy," lumbago, and chronic pain syndrome. See Transcript at 1101. His recommendations included lumbar medial branch blocks. Kumar started Smith on Tramadol, changed the Flexeril to tizanidine, but otherwise continued him on his medication.

Between November 7, 2013, and March 11, 2014, Smith was seen at Health Resources of Arkansas on what appears to have been approximately seven occasions. See Transcript at 645-650 (10/31/2013), 644 (11/07/2013), 638-643 (11/12/2013), 635-637 (11/27/2013), 634 (01/06/2014), 633 (01/21/2014), 631-632 (03/11/2014). The progress notes reflect that he repeatedly reported a depressed mood, feelings of worthlessness because he could not work, and, at times, suicidal ideations. He reported that he had trouble sleeping and maintaining concentration. He also reported becoming angry over small things. A major depressive disorder was diagnosed on at least three occasions, and it appears that he was taking Prozac and amitriptyline during that period of time for his symptoms, see Transcript at 640, 644.

Between February 19, 2014, and June 16, 2015, Smith sought treatment for his leg problems on what appears to have been approximately four occasions at the Medical Park Orthopaedic Clinic. See Transcript at 445-448 (02/19/2014) 449-452 (02/24/2014), 453-455 (02/27/2014), 1036-1038 (06/16/2015). An MRI revealed a right medial meniscus tear, and surgery was performed on February 27, 2014, to repair the tear. When he presented on June 16, 2015, a ruptured tendon in his left leg was diagnosed, and he was prescribed a walking boot.

Between April 30, 2014, and July 6, 2015, Smith was seen at the Oak Park Medical Office on what appears to have been approximately six occasions. See Transcript at 678-682 (04/30/2014), 976-979 (05/21/2014), 944-948 (10/21/2014), 1077-1081 (11/18/2014), 1085-1087 (06/17/2015), 1091-1093 (07/06/2015). He was seen for complaints that included depression; chest, back, and hand pain; anxiety; headaches; abdominal pain; and problems related to his diabetes.

The Oak Park Medical Office notes reflect, <u>inter alia</u>, that when Smith was seen on April 30, 2014, a musculoskeletal examination produced largely normal findings. <u>See</u> Transcript at 678-682. He had normal strength and tone in his lower extremities, his gait was normal, and he was able to stand without difficulty. A mental status examination revealed that he was oriented to person, place, and time; his memory was intact; and his attention and concentration were within normal limits.

On May 21, 2014, an Oak Park Medical Office advanced practice registered nurse ("APRN") completed a migraine headache form on behalf of Smith. <u>See</u> Transcript at 653. Smith reported having daily headaches for two to three hours in duration but reported good results with ibuprofen. The APRN did note, though, that Smith had never been treated for headaches at the Oak Park Medical Office.

Smith was last seen at the Oak Park Medical Office on July 6, 2015. <u>See</u> Transcript at 1091-1093. A musculoskeletal examination revealed tenderness to palpation in his spine, but he nevertheless had a full range of motion and normal strength and tone. He had diffuse tenderness to palpation in his lower left extremity, and mild pain was elicited on palpation of his left leg calf. A mental status examination was unremarkable.

An assessment of Smith's physical residual functional capacity was made by two state agency physicians, Dr. Ronald Davis, M.D., ("Davis"), <u>see</u> Transcript at 101-104, 121-124, and Dr. Lucy Sauer, M.D., ("Sauer"), <u>see</u> Transcript at 145-147, 166-168. They opined that Smith is capable of, <u>inter alia</u>, lifting and/or carrying twenty pounds frequently and ten pounds occasionally. They also opined that he is capable of standing, walking, and sitting for about six hours in an eight hour workday but has limitations in his ability to push and pull with his lower extremities because of his knee surgery.

An assessment of Smith's mental residual functional capacity was made by two state agency physicians, Dr. Jon Etienne Mourot, Ph.D., ("Mourot"), see Transcript at 104-106, 124-126, and Dr. Susan Daugherty, Ph.D., ("Daugherty"), see Transcript at 147-149, 168-170. They agreed that Smith has moderate limitations caused by depression and anxiety but is capable of performing simple, repetitive one to two step tasks with limited public or interpersonal contact.

The record contains a history of Smith's reportable earnings for the years 1980 through 2015. See Transcript at 264-267. The history reflects that he had reportable earnings through 2010, although he testified during the administrative hearing that he had self-employment earnings through 2013. See Transcript at 43-44.

Smith and his wife completed a series of documents in connection with his applications for disability insurance benefits and supplemental security income payments. See Transcript at 281-292, 293-302, 303-305, 306-313, 314-315, 321-327, 350-351. In the documents, it was represented that he was taking prescription and over-the-counter medication for insomnia, stomach problems, back and knee pain, diabetes, hypertension, neuropathy, depression, and high cholesterol. He represented that he can attend to his own personal care but cannot prepare meals or perform any house or yard work. Smith has trouble getting around, has no hobbies or interests, and does not engage in social activities. He prefers to be left alone and typically spends the day by himself. A typical day consists of getting dressed, taking his medication, eating his meals, watching television, and resting. He can lift between fifteen to twenty pounds and can walk for about ten minutes before the pain in his knees becomes so severe that he must stop and rest.

Smith testified during the administrative hearing. See Transcript at 41-56. He was born on October 25, 1967, and was forty-seven years old at the time of the hearing. He took special education classes in school and only completed the sixth grade. He cannot read or write but can do basic mathematics. He took insulin for his diabetes, which helped treat the impairment, but he stopped taking the medication when his health insurance was cancelled. Without the insulin, he becomes forgetful and loses track of things. Smith experiences neuropathy, which causes his hands and feet to hurt. He can be on his feet for about an hour before he experiences pain. He also experiences pain in his back, pain he attributed to arthritis.

The ALJ found at step two that Smith has severe impairments in the form of "diabetes mellitus, obstructive sleep apnea, residual of right knee surgery, hypertension, obesity, periodic limb movement disorder, anxiety, and depression." See Transcript at 14. The ALJ assessed Smith's residual functional capacity and found that he can perform "less than the full range of light work ..." See Transcript at 24. The ALJ found that Smith's impairments cause the following additional limitations:

> ... The claimant can occasionally stoop, kneel, crouch, and crawl. He cannot work around hazards such as unprotected heights or dangerous machinery. He is limited to performing simple, routine tasks. He is limited to incidental interpersonal contact. He can tolerate only occasional changes in a routine work setting.

See Transcript at 24. In making the foregoing findings, the ALJ gave great weight to the opinions offered by Nix, Davis, Sauer, Mourot, and Daugherty. The ALJ found at step four that Smith cannot return to his past relevant work but found at step five that there was other work he can perform.

Smith has limitations caused primarily by back pain, knee pain, and depression. The question for the ALJ was the extent to which the limitations impact the most Smith can do. The ALJ incorporated limitations for the impairments into the assessment of Smith's residual functional capacity but found that he was not disabled for purposes of the Social Security Act. The ALJ could find as he did because substantial evidence on the record as a whole supports his consideration of the evidence and his assessment of Smith's residual functional capacity. The Court so finds for three reasons.

First, the ALJ adequately considered the medical evidence relevant to Smith's physical limitations. For instance, the ALJ noted the results of the June 13, 2013, CT scan which revealed arthritic changes in Smith's back with small disc bulges at L3-4 and L5-S1. The ALJ noted that Smith underwent surgery on February 27, 2014, to repair a right medial meniscus tear, and Smith reported at a follow-up examination that he was "doing better" but was still experiencing some pain. See Transcript at 682. The ALJ also noted Siddiqui's observations during the April 30, 2014, examination, observations that Smith had a normal gait and station, normal muscle strength and tone in his upper and lower extremities, but palpation and hyperextension of the lumbar facet joints produced low back pain. The ALJ noted the findings of the June 15, 2015, emergency room examination, findings the ALJ could and did characterize as "largely normal." See Transcript at 26. The findings reflect that Smith had a normal range of motion in his extremities and no neurologic abnormalities. Testing did reveal, though, mild soft tissue swelling in his left leg. When Smith presented to the Medical Park Orthopaedic Clinic on June 16, 2015, a ruptured tendon in his left leg was diagnosed, and he was prescribed a walking boot.

Clearly, Smith has mild to moderate degenerative joint disease. When he was seen at the Oak Park Medical Office on April 30, 2014, though, a musculoskeletal examination produced largely normal findings. Specifically, he had normal strength and tone in his lower extremities, his gait was normal, and he was able to stand without difficulty. When Smith was seen on July 6, 2015, a musculoskeletal examination revealed tenderness to palpation in his spine and diffuse tenderness to palpation in his lower left extremity. Nevertheless, he exhibited a full range of motion and normal strength and tone.

Second, the ALJ adequately considered the medical evidence relevant to Smith's mental limitations. For instance, the ALJ noted that Smith sought medical attention for suicidal ideations during 2013 and 2014. The ALJ could and did find, though, that Smith's mental and/or cognitive functioning eventually improved, particularly after a five day hospitalization.[2] When Smith was discharged after the five day hospitalization, Stanley observed that Smith was alert and fully oriented, had a congruent affect, a goal-directed and logical thought process, but manifested a depressed mood. Stanley additionally observed that Smith "appear[ed] to function within the broad limits of average" cognitive ability. See Transcript at 371. When Smith was seen at the Oak Park Medical Office on April 30, 2014, a mental status examination revealed that he was oriented to person, place, and time; his memory was intact; and his attention and concentration were within normal limits. When he was seen at the Oak Park Medical Office on July 6, 2015, a mental status examination revealed unremarkable findings.

---

[2] "Because individuals with a mental illness may experience periods during which they are relatively symptom-free," the Court recognizes that "their level of functioning can vary significantly over time." See Mabry v. Colvin, 815 F.3d 386, 392 (8th Cir. 2016).

Third, the ALJ adequately considered the non-medical evidence relevant to Smith's physical and mental limitations. For instance, the ALJ considered Smith's daily activities. Although Smith can attend to his own personal care and represented he can lift between fifteen to twenty pounds, he cannot prepare meals or perform any house or yard work. He has trouble getting around, has no hobbies or interests, and does not engage in social activities. He prefers to be left alone and typically spends the day by himself. There is little evidence, though, to support such an extreme limitation of his activities. It is conceivable that the limitation of his activities is the product of a personal choice and not the result of his impairments.

Smith takes prescription medication for his pain, and lumbar medial branch blocks have been recommended. Although he reported having severe headaches, he rarely sought treatment for them and reported having good results with ibuprofen. He takes prescription medication for his depression and anxiety, medication that has included Prozac, and he appears to have gained some benefit from the medication.

The ALJ gave little mention to the remaining Polaski v. Heckler factors, but his failure to give greater consideration to those factors does not warrant a remand. The evidence relevant to the factors is minimal.

Smith challenges the assessment of his residual functional capacity because the record does not contain a physical or mental residual functional capacity assessment from a treating or examining physician. Although it is true that there is no such assessment, a remand is not warranted. "[T]here is no requirement that a [residual functional capacity] finding be supported by a specific medical opinion," see Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016), and the record in this case contains ample

evidence for the ALJ to have made an informed decision. Specifically, the ALJ could and did rely upon the findings and observations of the medical professionals during their examinations of Smith. The ALJ could and did also rely to some extent upon the opinions of the state agency physicians, who opined that Smith is capable of standing, walking, and sitting for about six hours in an eight hour workday and is capable of performing simple, repetitive one to two step tasks with limited public or interpersonal contact.

Smith challenges the assessment of his residual functional capacity because there is no evidence he is capable of satisfying the standing and walking requirements of light work. The ALJ, though, could find as he did. Smith has back pain, but the findings and observations of the medical professionals with regard to his gait, station, range of motion, and muscle strength and tone were largely unremarkable. Moreover, although the opinions of the state agency physicians are certainly not entitled to great weight, the ALJ could and did give the opinions some weight. The physicians opined that Smith is capable of performing the requisite standing and walking.

Smith challenges the assessment of his residual functional capacity because he has greater mental limitations than the ALJ found. The ALJ, though, could find as he did. It is true that Smith sought treatment for his mental impairments on several occasions and was even hospitalized for suicidal ideations. The progress notes from his examinations at the Oak Park Medical Office, though, contain unremarkable findings. Moreover, the ALJ could and did rely to some extent upon the opinions of Mourot and Daugherty, both of whom opined that Smith has moderate limitations caused by depression and anxiety but is capable of performing simple, repetitive one to two step tasks with limited public or interpersonal contact.

The governing standard in this case, i.e., substantial evidence on the record as a whole, allows for the possibility of drawing two inconsistent conclusions; it therefore embodies a zone of choice within which the ALJ may decide to grant or deny benefits without being subject to reversal. See Culbertson v. Shalala, 30 F.3d 934 (8th Cir. 1994). In this instance, the ALJ's assessment of Smith's residual functional capacity was within the zone of choice, and the ALJ could properly find as he did.

Smith offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Smith maintains that the record was not fully developed with respect to his illiteracy. The Court cannot agree as the record contains sufficient information for the ALJ to have made an informed decision.[3] The ALJ considered Smith's education and found that he has a sixth grade education with some special education classes, i.e., he has a "marginal education." The ALJ's finding is consistent with the record. Moreover, it is worth noting that Stanley observed Smith to be functioning within the broad limits of average cognitive ability. Although Smith has limitations caused by his education, the ALJ accounted for those limitations by restricting Smith to tasks that are simple and routine, involve "incidental interpersonal contact," and involve "only occasional changes in a routine work setting."

On the basis of the foregoing, the Court finds that there is substantial evidence on the record as a whole to support the ALJ's findings. Smith's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

---

[3] **Error! Main Document Only.**The ALJ has an obligation to fully develop the record, even if the claimant is represented by counsel. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). There is no bright line test for determining whether the ALJ fully developed the record; the determination is made on a case by case basis. See Id. It involves examining whether the record contains sufficient information for the ALJ to have made an informed decision. See Pratt v. Astrue, 372 Fed.Appx. 681 (8th Cir. 2010).

IT IS SO ORDERED this 13th day of July, 2017.

_____
UNITED STATES MAGISTRATE JUDGE